UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAROUK MOHAMMED ALWAZZAN (A-246-800-415),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-06607 TLN CSK<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is an immigration detainee proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner challenges his continued detention by the U.S. Immigration and Customs Enforcement ("ICE"). Petitioner, a native and citizen of Egypt, applied for admission to the United States upon his arrival at the border on December 15, 2024. Petitioner has been detained since that time. Petitioner claims his prolonged detention violates due process under the Fifth Amendment. For the following reasons, this Court recommends that the petition be granted and that petitioner receive a bond hearing.

## I. FACTUAL BACKGROUND

Petitioner is a native and citizen of Egypt. (ECF No. 8 at 14.) On December 15, 2024, petitioner applied for admission and requested asylum at the Eagle Pass Camino Real

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72 and Local Rule 302(c)(17).

International Bridge. (Id. at 15.) Petitioner was taken into custody. (Id.) On December 15, 2024, petitioner underwent his first credible fear interview.[2] (ECF No. 1-3 at 3.) A second credible fear interview was conducted on December 20, 2024. (Id.) The asylum officer told petitioner that he had demonstrated a credible fear of persecution or torture and that his case would be referred to an immigration judge for a full hearing on his asylum claim. (Id.) On December 20, 2025, petitioner was issued a Notice to Appear charging him under Immigration and Nationality Act section 212(a)(7)(A)(i)(l), 8 U.S.C. § 1182(a)(7)(A)(i)(l), as an immigrant, who at the time of application for admission, was not in possession of a valid entry document. (ECF No. 8 at 10.) In the Notice to Appear, the box indicating that the notice was issued after an asylum officer had found that petitioner demonstrated a credible fear of torture is not checked. (Id.) This appears to be an error.

On February 7, 2025, petitioner submitted a written request for humanitarian parole. (ECF No. 1-9 at 3.) This request has not been adjudicated and petitioner's counsel received no written decision granting or denying parole. (Id. at 4.)

On March 10, 2025, petitioner filed a motion for bond. (ECF No. 1-3; ECF No. 1-9 at 4.) On March 20, 2025, an immigration judge denied petitioner's motion for bond on the grounds that the court did not have the authority to set bond because petitioner is an applicant for admission. (ECF No. 1-2 at 3.) The immigration judge also denied petitioner's motion for bond because petitioner was being transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture. (Id.)

On June 2, 2025, petitioner filed applications for asylum, withholding of removal and protection under the Convention Against Torture. (ECF No. 1-9 at 3.) On July 2, 2025, an immigration judge granted petitioner's motion for a continuance of the hearing scheduled for July 11, 2025. (ECF No. 8 at 23.) On July 17, 2025, the immigration judge granted petitioner's second motion for a continuance. (Id. at 26.) Both orders state that separate notices with the rescheduled dates will be sent to petitioner. (Id. at 23, 26.) On March 11, 2026, petitioner filed a

---

[2] Petitioner's claims regarding his credible fear interviews are made in his motion for bond filed March 10, 2025. (ECF No. 1-3 at 3.)

corrected application for asylum, withholding of removal and protection under the Convention Against Torture. (ECF No. 1-1; ECF No. 1-9 at 3.) On June 11, 2026, the immigration judge denied petitioner's applications for asylum, withholding of removal and protection under the Convention Against Torture. (ECF No. 1-5 at 1.) The immigration judge ordered petitioner removed to Egypt. (Id. at 3.) On June 23, 2026, petitioner appealed this decision to the Board of Immigration Appeals ("BIA"). (ECF No. 1-6; ECF No. 1-7.) That appeal remains pending. (ECF No. 1-9 at 6.)

## II. PROCEDURAL BACKGROUND

Petitioner filed the petition for writ of habeas corpus on August 18, 2026. (ECF No. 1.) On August 19, 2026, the district court referred this action to the assigned magistrate judge. (ECF No. 4.) On August 28, 2026, respondents filed a timely answer to the petition. (ECF No. 8.) On September 4, 2026, petitioner filed a traverse. (ECF No. 9.) Briefing is now complete.

## III. LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Petitioner challenges his prolonged detention without a bond hearing as a due process violation. (ECF No. 1 at 29-46.) Petitioner also raises a second due process claim based on the "total absence of individualized custody review." (Id. at 46-47.) Respondents argues that

petitioner's detention is mandated by statute, 8 U.S.C. § 1225(b)(1), and that petitioner's detention does not violate due process. (ECF No. 8 at 2-7.)

**A. Claim One: Due Process Claim Based on Prolonged Detention**

1. Statutory Basis for Petitioner's Detention

For the following reasons, this Court finds that petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1). Petitioner was detained on December 15, 2024 upon his arrival at the United States border. A noncitizen who is present in the United States but has not been admitted is considered an applicant for admission. 8 U.S.C. § 1225(a)(1). Such applicant is subject to expedited removal if the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of admissibility"; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)-(II). Once "an immigration officer determines" that a designated applicant "is inadmissible," "the officer [must] order the alien removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i).

If a noncitizen detained pursuant to 8 U.S.C. § 1225(b)(1) "indicates either an intention to apply for asylum ... or a fear of persecution," then that noncitizen is referred for an asylum interview. 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the noncitizen is to remain detained. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the noncitizen has a credible fear of persecution, "the [noncitizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Noncitizens who are subjected to expedited removal under § 1225(b)(1) are mandatorily detained "pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).[3]

[3] As discussed above, petitioner claims he applied for humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A) on February 7, 2025, but received no written decision granting or denying this

Here, petitioner is subject to mandatory detention pursuant to 8 U.S.C.§ 1225(b)(1)(B)(ii) because the immigration judge denied his application for asylum and ordered him removed, and petitioner's appeal of that decision to the BIA is pending.

2. Discussion

At the outset, this Court finds that petitioner has not received a bond hearing before an immigration judge or neutral decisionmaker who considered whether petitioner posed a danger to the community or a risk of flight.

This Court agrees with other district courts that have addressed whether petitioners subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1) may raise Fifth Amendment due process claims based on prolonged detention:

> As the Supreme Court explained in Jennings v. Rodriguez, section 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." 583 U.S. 281, 297 (2018). Until consideration of an individual's application for asylum has concluded, "nothing in the statutory text imposes any limit on the length of detention" and "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." Id.
>
> However, Petitioner's rights are not limited to those laid out by statute. Nothing in the Supreme Court's decision in Jennings precludes Petitioner from bringing this as-applied constitutional challenge. See Nielsen v. Preap, 586 U.S. 392, 420 (2019) (explaining that the Court's decision that mandatory detention statute did not provide a bond hearing "does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it"). As the Ninth Circuit identified on remand from Jennings, that Supreme Court case solely addressed whether section 1225 itself permits arbitrary prolonged detention and "declined to reach the constitutional question." Rodriguez, 909 F.3d at 255.

Mohammed v. Warden of California City Det. Ctr., 2026 WL 192368, at *2 (E.D. Cal. Jan. 26, 2026) (granting petitioner's motion for temporary restraining order and ordering bond hearing within seven days before an immigration judge of petitioner detained for seventeen months pursuant to § 1225(b)).

The Fifth Amendment Due Process Clause protects persons in the United States from

---

application. (ECF No. 1-9 at 3-4.)

being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. To determine if petitioner's procedural due process rights have been violated, courts examine two steps: the first step determines whether there exists a protected liberty interest under the Due Process Clause; and the second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*a. Petitioner Has a Protected Liberty Interest*

First, the Court determines whether a protected liberty interest exists under the Due Process Clause. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). Petitioner was initially detained by immigration officials on December 15, 2024, and has remained in custody for over twenty months since. Further, due to petitioner's appeal to the BIA, followed by the Ninth Circuit provided either party seeks further review, petitioner faces indefinitely prolonged detention while his case is processed. "As Petitioner has been deprived of the liberty secured by the Due Process Clause and this deprivation will continue for a protracted and indefinite period, Petitioner has established his liberty interest." Mohammed, 2026 WL 192368, at *3 (petitioner with pending asylum claim detained pursuant to § 1225(b)). The Court concludes that petitioner has a protected liberty interest. See id.; Temesgen v. Larose, 2026 WL 2076158, at *1-2 (S.D. Cal. July 17, 2026) (petitioner detained pursuant to 8 U.S.C. § 1225(b)(1) for over ten months with pending BIA appeal subject to prolonged detention in violation of due process); Mirzada v. Warden, 2026 WL

1864591, at *1-3 (E.D. Cal. June 2, 2026), finding and recommendations adopted, 2026 WL 2030165 (E.D. Cal. Jul. 14, 2026) (petitioner detained pursuant to 8 U.S.C. § 1225(b)(1) for two years with pending BIA appeal subject to prolonged detention in violation of due process); Zinaida v. Lyons, 2026 WL 1584699, at *1-2 (D. Ariz. June 3, 2026) (petitioner detained pursuant to 8 U.S.C. § 1225(b)(1) for over 18 months with pending BIA appeal had protected liberty interest); Tigranyan v. Warden of California City Detention, 2026 WL 91765, at *4 (E.D. Cal. Jan. 13, 2026), findings and recommendations adopted, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026) (concluding petitioner detained for nearly fifteen months pursuant to 8 U.S.C. § 1225(b)(1) with pending asylum claim determined to be credible has a protected liberty interest); Khaco v. Warden, 2026 WL 295551, at * (E.D. Cal. Feb. 4, 2026) (petitioner detained pursuant to 8 U.S.C. § 1225(b)(1) for over fifteen months has protected liberty interest); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the petitioners who were detained under § 1225(b)(1) adequately "alleged a right to substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals").

*b. Due Process Framework*

Having established that petitioner has a protected liberty interest, the Court must now determine what process is due. District courts in the Ninth Circuit have applied different tests to make this determination, including the three-factor test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), and other tests. See Mohammed, 2026 WL 192368, at *3 (describing different tests used by district courts); Abdul-Samed v. Warden of Golden State Annex Detention Facility, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) (for prolonged detention of asylum applicant detained under § 1225(b), applying multi-factor test articulated in Lopez v. Garland, 631 F. Supp. 3d 870, 880 (E.D. Cal. 2022) for mandatory detention under 8 U.S.C. § 1226(c)). This Court

applies the three-factor test articulated in Mathews, 439 U.S. 319.[4] See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that the Mathews standard applies to a due process challenge to a noncitizen's ongoing detention); Mohammed, 2026 WL 192368, at *3 (applying Matthews); Khaco, 2026 WL 295551, at *4-6 (applying Mathews). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

i. Private Interest

Turning to the first factor in Mathews, petitioner has a strong liberty interest in avoiding prolonged detention without a neutral detention hearing. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Petitioner has been detained for over 20 months. Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, petitioner's detention qualifies as prolonged. See Zadvydas, 533 U.S. at 701. An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011), abrogated on other grounds by Rodriguez Diaz, 53 F.4th at 1196; see also Lopez v. Garland, 631 F. Supp. 3d at 880 ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citation omitted).

In evaluating this factor, the court also takes into account whether petitioner contributed towards the length of his prolonged detention. See Rodriguez Diaz, 53 F.4th at 1207-08; Arshakyam v. Warden of California City Det., 2026 WL 143143, at *4 (E.D. Cal. Jan. 20, 2026). Some of petitioner's prolonged detention is the result of continuances petitioner requested in his asylum proceedings. As discussed above, the record indicates that petitioner requested two

---

[4] The Court notes that the factors in the other tests district courts have applied overlap to varying degrees with the Mathews due process analysis and will be considered as part of this Court's analysis. See Abdul-Samed, 2025 WL 2099343, at *6-8.

continuances. (ECF No. 8 at 23, 26.) Based on this record, this Court finds that though petitioner's requests for continuances delayed his proceedings, the proceedings have also been delayed through no fault of petitioner, resulting in petitioner's prolonged detention. See also Lopez, 631 F. Supp. 3d at 882 ("[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process.").

Because petitioner's appeal to the BIA is pending, "there is no clear end date for petitioner's detention on the record before this court." Tigranyan, 2026 WL 91765, at *5; see Mohammed, 2026 WL 192368, at *3. This Court finds that the circumstances discussed above tip the first Mathews factor in petitioner's favor. See Tigranyan, 2026 WL 91765, at *5 (first Mathews factor weighed in petitioner's favor where petitioner detained almost 15 months pursuant to § 1225(b)(1): "While some of petitioner's prolonged detention is the result of continuances he requested in his immigration court proceedings, additional continuances have also resulted from a clogged immigration court docket."); Arshakyam v. Warden of California City Detention, 2026 WL 143143, at *4 (E.D. Cal. Jan. 20, 2026) (in granting motion for a temporary restraining order for a bond hearing for a petitioner detained for 14 months pursuant to § 1225(b)(1), court found that first Mathews factor weighed "somewhat" in petitioner's favor where the length of petitioner's prolonged detention "largely due to petitioner's own actions").

ii. Risk of Erroneous Deprivation

Here, the risk of erroneous deprivation is considerable. See Mohammed, 2026 WL 192368, at *4; Tigranyan, 2026 WL 91765, at *6; see also Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) ("the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial"), abrogated on other grounds by Rodriguez Diaz, 53 F.4th 1189; Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional"). "Civil immigration detention is 'nonpunitive in purpose and effect' and, therefore, only justified when a noncitizen is a flight risk or danger to the community." Mohammed, 2026 WL 192368, at *4 (quoting Zadvydas, 533 U.S. at 690). Petitioner asserts, and

respondents do not dispute, that petitioner has no criminal record. (See ECF No. 1-9 at 14 (counsel's verified declaration, ¶ 64); ECF No. 8 (answer)). Where petitioner has not received a bond hearing, has been detained for over twenty months, and it is not clear when detention will end given his appeal to the BIA and possible further appeal to the Ninth Circuit, the probable value of this additional procedural safeguard is high. See Maksim v. Warden, Golden State Annex, et al., 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025); Mohammed, 2026 WL 192368, at *4; Tigranyan, 2026 WL 91765, at *6; Khaco, 2026 WL 295551, at *6. For these reasons, the second Mathews factor weighs in favor of petitioner.

iii. Government's Interest

Under the third factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. The Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a bond hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); see Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025); Maksim, 2025 WL 2879328, at *5. Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094; see Mohammed, 2026 WL 192368, at *4. Petitioner's individual request for a bond hearing also involves a minimal fiscal and administrative burden, and respondents do not argue otherwise. (See ECF No. 8.) "Thus, there is not even the suggestion, much less a basis in the record to find, any fiscal or administrative burden to the government that would result from providing a bond hearing to petitioner." Tigranyan, 2026 WL 91765, at *6. For these reasons, the third Mathews factor weighs in favor of petitioner.

3. Conclusion

The Court concludes that petitioner's detention is prolonged and he is entitled to a bond hearing before an immigration judge to justify his continued detention. At the bond hearing, respondents would bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to demonstrate that continued detention is warranted. See Mohammed, 2026 WL 192368, at *3-4, 5; Temesgen, 2026 WL

2076158, at *2 (ordering bond hearing for petitioner detained pursuant to § 1225(b)(1), who is subject to prolonged detention in violation of due process, where government bears the burden of establishing by clear and convincing evidence that petitioner poses a danger or flight risk); Mirzada, 2026 WL 1864591, at *5 (same); Zinaida, 2026 WL 1584699, at *4-5 (same); Maksim, 2025 WL 2879328, at *6 (same); Khaco, 2026 WL 295551, at *7 (same).

**B. Remaining Claim**

Because the Court finds that petitioner is entitled to relief as to claim one, the Court need not address claim two. See N.K. v. Noem, 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to second count of the petition and not addressing the other counts because the petitioner is entitled to relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release.")

**V. CONCLUSION**

For the foregoing reasons, the Court recommends that the petition for writ of habeas corpus be granted as to claim one.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be GRANTED as to claim one.

2. Respondents be ordered to provide petitioner Farouk Mohammed Alwazzan (A-246-800-415) with a bond hearing before an immigration judge/neutral decisionmaker within **fourteen (14) days** of the adoption of these findings and recommendations where respondents bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify his continued detention. Respondents must provide petitioner and petitioner's counsel with at least seven (7) days' notice before the bond hearing. Petitioner shall be allowed to have his counsel present at any such hearing. If a bond hearing is not held within 14 days, petitioner shall be immediately released.

3. The Clerk of the Court be directed to enter judgment in favor of petitioner and close

this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 14, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Alwa6607.157.imm.BOND